**Darlene M. COLLETT, Plaintiff–**
**Appellant,**

v.

**PIPER'S SAW SHOP, INC.,**
**Defendant–Cross**
**Appellant.**

No. 00–1290, 00–1291.

United States Court of Appeals,
Federal Circuit.

Feb. 9, 2001.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

NEWMAN, Circuit Judge.

Darlene M. Collett appeals the adverse decision of the United States District Court for the Eastern District of Texas,[1] holding, in a bench trial, that the patent in suit is not infringed under the doctrine of equivalents, and is invalid for violation of 35 U.S.C. § 102(b), the on-sale bar. United States Patent No. 4,889,025, inventor Kenneth L. Collett, issued December 26, 1989 upon an application filed May 23, 1988. A reexamination certificate, B1 4,889,025, issued December 3, 1996. Reexamined claim 1 is representative:

Rex 1. An improved cutting tooth for a circular saw of the type commonly used to cut raw logs comprising a crescent shaped steel bit and a wedge shaped cutting tip affixed to an upper portion of said bit wherein said cutting tip is composed of high impact resistant carbide alloy consisting essentially of a mixture of 83.5% tungsten carbide, 16% cobalt and 0.5% tantalum carbide, said bit being disposed in said circular saw so that said cutting tip has a hook with a positive angle of about 37˝ with respect to the radius of said saw, *said cutting tip has an inner end which is received in a slot in said bit,*

*said crescent shaped steel bit has an outer edge and an inner edge, said outer edge comprises a curved portion and a flattened portion,*

*said inner edge of said bit comprises a projection extending in a direction away from said outer edge, said projection having a forward edge on one side with said slot formed therein and a concave edge formed on a side of said projection opposite said forward edge for receiving a portion of a shank for holding said bit to said circular saw,*

*said slot comprising first and second spaced apart edges which face each other and a transverse edge extending between said first and second edges with said first edge facing in the direction of said outer edge of said bit and said second edge comprising an elongate slot edge which joins said flattened portion of said bit such that said elongate slot edge and said flattened portion of said bit define an acute angle,*

*said first edge of said slot being much shorter than said second edge,*

*said cutting tip having its said inner end located and secured in said slot with an elongated tip portion located adjacent to said second edge and a cutting tip outer edge which joins said elongated tip portion defining an obtuse angle there–between,*

*said cutting tip having a cutting face opposite said elongated tip portion with a substantial portion of said cutting face being located outside of said slot such that an inner edge of said tooth is defined by a portion of said cutting face of said tip, said forward edge and said concave edge.*

---

1. *Collett v. Piper's Saw Shop, Inc.,* No. 4:98cv150 (E.D.Tex. Feb. 29, 2000).

*Infringement*

Following a *Markman* hearing, the district court construed the only disputed element of the claims, "wherein said cutting tip is composed of high impact resistant carbide alloy consisting essentially of a mixture of 83.5% tungsten carbide, 16% cobalt and 0.5% tantalum carbide" to mean

a carbide alloy consisting essentially of a mixture of 83.5% tungsten carbide, 16% cobalt and 0.5% tantalum carbide, or an equivalent carbide alloy containing tungsten carbide, cobalt and tantalum carbide in different proportions, or an additional element or elements or additional compound or compounds that does not materially affect the ability of the cutting tip to resist shattering when said cutting tip has a hook with a positive angle of about 37 degrees with respect to the radius of said saw.

On the court's claim construction, Collett conceded that there was no literal infringement since the cutting tip alloy of the accused saw teeth does not contain tantalum carbide, an alloy component in all of the claims. The district court held there was no infringement under the doctrine of equivalents because Collett had argued repeatedly during the original prosecution of the application and also during the reexamination proceeding, in order to overcome prior art, that his invention was patentable because of the specific composition of the cutting tip. The court held that prosecution history estoppel precluded liability for equivalency of a cutting tip that did not contain tantalum.

The district court held that the all-elements rule was violated by the omission of the tantalum carbide from the alloy. The plaintiff argues that the all-elements rule is not violated by omission of the trace (0.5%) of tantalum carbide, arguing that the "claimed element" is properly viewed as the tungsten carbide-based alloy known as Valenite VC–12. The plaintiff states that the claimed alloy and the accused alloy must be compared for substantial similarity, interchangeability, and other criteria of equivalency, and that minor changes in the composition of the alloy do not violate the all-elements rule. The plaintiff states that the only reason that the 0.5% tantalum carbide is in the claim is because that was the composition of the alloy that the inventor bought from the supplier, and that the inventor simply reported the composition that he found to be highly effective in the particular tooth structure described and claimed in the patent.

When applying the all-elements rule, care must be taken to identify the "claimed elements" correctly, lest the doctrine of equivalents be collapsed into literal infringement. However, in this case the inventor included in the claim the separate components of the alloy, and relied on the presence of tantalum carbide to distinguish his invention from the tungsten carbide alloy used in the prior art. Under these circumstances, the separate components of the alloy were properly viewed as separate claimed elements, and the complete omission of any one or an equivalent thereof violates the all-elements rule.

The judgment of non-infringement is affirmed.

*The On–Sale Issue*

For the on-sale bar, the critical date is May 23, 1987. The record contains advertisements starting in March 1988 that are conceded to be offers by the inventor's company to sell the patented cutting teeth, although the ads do not state the composition of the alloy. An article describing the performance of these cutting teeth (although the formulation is not disclosed) was published in November 1987. There was evidence that the first cutting tips containing the alloy described

and claimed in the patent, called VC–12 cutting tips, were shipped to the inventor from the Valenite factory that made them on March 24, 1987. There is no written record of when the patented cutting teeth were made from the Valenite tips and tested, for the relevant records were apparently destroyed following the inventor's death in 1992.

The district court found that the invention "was the subject of a commercial sale at least as early as April of 1987." The appellant says that "there is not a shred of documentary evidence or testimony to support that finding." We must agree. The only testimony at trial was that of the inventor's brother, also in the family business, that it would have taken at least ninety days after the VC–12 alloy was received, to make the experimental teeth and test them.

The inventor was in the business of making and selling sawmill cutting teeth, and made and sold other teeth having the shape presented in the claims before the critical date. However, there was no evidence of a shift to the VC–12 alloy until the article, six months after the critical date, in which the inventor stated "We've gone to a high impact mining grade carbide ...." The brother of the deceased inventor testified that no product containing the VC–12 tips was sold or offered for sale before the critical date. The brother also testified that samples of the new VC–12 teeth were provided free of charge for testing by potential customers under conditions of actual use in sawmills. The uncontroverted testimony was that this testing alone would take sixty days, for an important property of saw teeth is their durability in use. No evidence from any source was presented of an actual sale or offer for sale before the critical date.

The district court chose to discredit the testimony of the inventor's brother as an interested person. However, there was no contrary evidence. While credibility determinations are entitled to great deference on appeal, in this case that credibility determination left no evidence at all. However, clear and convincing evidence is required to prove a patent invalid. In the total absence of any evidence that the product had been sold or offered for sale by the critical date, and the contrary evidence that the new product was not announced to the public until many months later, violation of the on-sale bar was not proved by clear and convincing evidence.

The judgment of invalidity is reversed.

### The Cross Appeal

In its counterclaims to Collett's charge of infringement, Piper asserted that the patent is invalid as obvious over the prior art, and unenforceable on the ground of inequitable conduct before the PTO. The district court held that these counterclaims were not supported by the evidence. Piper appeals these holdings.

Piper's charges of obviousness and inequitable conduct focus on the admitted fact that a product called the Supertip 7000, a saw blade tip having the same overall shape as shown in the '025 invention but without the specific claimed composition of the tip alloy, had been sold by the patentee before the critical date and was thus prior art. Piper claims that this prior art, added to the art before the examiner and the specific alloy of the tip, which was also in the prior art, require the conclusion that the overall claimed combination would have been obvious. Collett replies that such an analysis constitutes impermissible hindsight, and points to the many years of experimentation that were required to find the optimum carbide alloy. Collett also disputes Piper's allegation that the shape of the Supertip 7000 had been withheld from the PTO, pointing to sales literature

showing the tip, supplied to the PTO with the request for reexamination.

All of these arguments were before the district court, who found that they did not provide the level of proof required for invalidity or unenforceability. We agree. Reversible error has not been shown in the district court's rulings on the issues of obviousness and inequitable conduct, which are affirmed.

*Conclusions*

The district court's determination that Piper does not infringe the '025 patent is *affirmed.* The determination that the '025 patent is invalid for violating the on-sale bar is *reversed.* The determination that the '025 patent is not invalid for obviousness or unenforceable due to inequitable conduct is *affirmed.*